**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **PHILIP ALBANESE, JR., individually and on behalf of all others similarly situated,** | **CIVIL ACTION** |
| **Plaintiff,** | **CASE NO. 1:26-cv-02607-ESK-MJS** |
| **v.** | **CLASS/COLLECTIVE ACTION** |
| **GOLDEN NUGGET ATLANTIC CITY, LLC,** | **JURY TRIAL DEMANDED** |
| | ***Electronically Filed*** |
| **Defendant.** | |

## FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Philip Albanese, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this First Amended Class and Collective Action Complaint against Defendant Golden Nugget Atlantic City, LLC ("Defendant"), and hereby states and alleges as follows:

## NATURE OF THE CLAIMS

1. Plaintiff works as a table games dealer for Defendant, a casino located in Atlantic City, New Jersey. Like most dealers, Defendant paid Plaintiff a sub-minimum base wage plus tips. In other words, Defendant purported to claim a tip credit minimum wage exemption under both New Jersey and federal law.

2. This case is principally about whether Defendant has paid table games dealers minimum wage as required by the New Jersey State Wage and Hour Law (NJWHL) and Fair Labor Standards Act (FLSA). For the reasons explained within, because Defendant is not entitled to a tip credit under New Jersey or federal law it has violated these remedial wage and hour statutes.

3. At all relevant times, Defendant has claimed a tip credit under federal and state law for most table games dealers, including Plaintiff. However, Defendant is not entitled to the tip credit for, at least, three reasons.

4. First, Defendant's use of the tip credit is unlawful under New Jersey and federal law because of how Defendant structures its table games dealers' work and schedules. The typical string (or schedule) for table games dealers during their scheduled shifts is 60 minutes dealing followed by a 20-minute company-mandated "rest" period off the casino floor during. Dealers remain under Defendant's control for the duration of these 20-minute periods and are not allowed to clock out or return to the tables to deal games and earn tips during this time. The 20-minute period is a structural component of the casino's schedule designed to benefit Defendant. These 20-minute periods ensure the dealer can continue performing quick, mistake-free math while dealing. Further, by constantly rotating the dealers during these 20-minute periods, the casino maintains a stable of fresh dealers ready to deal the games. Practically, dealers are unable to leave the casino or change out of their uniforms during this 20-minute period, the time is not truly their own, and it is occurring during their scheduled shift. Although Defendant maintains control over the dealers and actively precludes them from working on the floor and earning tips during these 20-minute periods, Defendant continues to claim a tip credit for this time.

5. Before accounting for time spent opening and closing the tables during which dealers cannot earn tips, pre- and post-shift work during which dealers cannot earn tips, and waiting time at the tables, table games dealers automatically spend at least 25% of their time on non-tipped work required by Defendant. Under the NJWHL, this non-tipped time is not eligible for the tip credit because it exceeds 20% of the dealers' working time in every workweek. New Jersey law treats dealers as non-tipped workers who do not customarily and regularly receive tips for the time where, as here, the dealers spend more than 20% of the workweek on non-tipped work. For the same reasons, Defendant cannot claim a tip credit under the FLSA.

6. Second, Defendant requires its table games dealers to pool their tips. Instead of

using its own resources to count, confirm, and reallocate the tips among the dealers who are part of the pool, Defendant uses the dealers' own tips to offset that cost. Under both the NJWHL and the FLSA, Defendant cannot claim a tip credit while using the dealers' tips to offset its own costs.

7. Third, the tip credit is an exception to New Jersey's minimum wage law. One of the prerequisites to claiming a tip credit is demonstrating that the party seeking to claim the tip credit provided notice of New Jersey's tip credit provisions to tipped workers. In other words, Defendant bears the burden of showing it complied with these requirements. Here, for at least a significant portion of the six-year limitations period under the NJWHL, Defendant failed to provide the information required by New Jersey's tip credit provisions and may not claim a tip credit. As a result, Defendant owes Plaintiff and all similarly situated workers the difference between their direct cash wage and the applicable minimum wage for all hours worked during that time. Likewise, because Defendant paid a sub-minimum wage and claimed a tip credit for both regular and overtime hours, the failure to give tip credit notice gives rise to both unpaid minimum wages and overtime wages.

## JURISDICTION AND VENUE

8. Federal question jurisdiction over the FLSA claims of Plaintiff and others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. Supplemental jurisdiction over the state law claims of Plaintiff and others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case and controversy.

10. There is also subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332(d) in that there are at least 100 putative class members, there is minimal diversity, and there is at least $5,000,000 in controversy.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

12. Plaintiff is a resident of Galloway, New Jersey.

13. Plaintiff was hired by Defendant in April 2014 to work as a table games dealer and continues to work in that role. At all times, Plaintiff has worked as a table games dealer earning a direct cash wage of less than $7.25 per hour plus tips and has been required to pool all his tips with other dealers. For example, during two workweeks between November 17, 2025 and November 30, 2025, Plaintiff worked 72 regular hours and was paid a direct cash wage of $6.50 per hour plus tips from the dealer tip pool. This hourly pay rate is below the minimum wage under both federal and New Jersey law. Plaintiff's Consent to Join form was previously filed at ECF No. 1.

14. Defendant is a limited liability corporation organized under the laws of New Jersey, with its principal place of business located in New Jersey. Defendant is registered to do business and does conduct business in New Jersey.

15. At all relevant times, Defendant has been an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of 29 U.S.C. § 203(s)(1), and, upon information and belief, has had an annual gross volume of sales made or business done of not less than $500,000.

16. At all relevant times, Defendant was the employer of Plaintiff, and all other similarly situated employees working at the casino property.

## OVERVIEW OF PLAINTIFF'S CLAIMS

### Defendant's Scheduling Practices for Table Games Dealers

17. Defendant operates a casino. Defendant's casino features dozens of table games (*e.g.*, blackjack, roulette, craps, *etc.*), which are staffed by table games dealers.

18. Defendant employs hundreds of table games dealers at any given time, most of whom, like Plaintiff, are paid a direct cash wage below New Jersey's minimum wage of $15.49 per hour. In other words, Defendant attempts to pay table games dealers pursuant to the tip credit provisions of the FLSA and NJWHL and then uses customer tips to make up the difference between the sub-minimum direct cash wage and the minimum wage.

19. Defendant pays table games dealers the sub-minimum wage tip credit hourly rate for all hours worked in the dealer capacity.

20. Defendant sets the "string" (*i.e.*, the working schedule during shifts) for table games dealers. The normal string for table games dealers is 60 minutes dealing followed by a 20-minute mandated period away from the table games and off the casino floor. The typical string (or schedule) for a table games dealer is 60 minutes dealing followed by a 20-minute company-mandated "rest" period off the casino floor during their scheduled shift.

21. Dealers remain under Defendant's control for the duration of these 20-minute periods and dealers cannot clock out or return to the tables to deal games and earn tips during this time. The 20-minute period is a structural component of the schedule designed to benefit Defendant. These 20-minute periods ensure that the dealer can continue performing quick, mistake-free math while dealing. Further, because Defendant requires all dealers to follow this practice, Defendant constantly has a group of fresh dealers ready to deal games. Practically, dealers are unable to leave the premises or change out of their uniforms during this 20-minute period and

the time is not truly their own. Although Defendant maintains control over the dealers and actively precludes them from working on the floor and earning tips during these 20-minute periods, Defendant continues to claim a tip credit for this time. Before accounting for time spent opening and closing the tables during which dealers cannot earn tips, pre- and post-shift work during which dealers cannot earn tips, and waiting time at the tables, table games dealers automatically spend at least 25% of their time on non-tipped work required by Defendant. Despite this, Defendant pays all this time at the sub-minimum wage tip credit hourly rate.

22. Plaintiff and other table games dealers also spend a considerable amount of their time opening and closing the tables, walking to and from the tables, and idle waiting for customers at the tables and other non-tip producing tasks. Defendant pays all this time at the sub-minimum wage tip credit hourly rate.

23. All the time spent by the dealers is included in the tip pool.

24. As a matter of course and logic, tables games dealers spend well more than 20% of their working time paid at the sub-minimum wage tip credit hourly rate doing tasks for which they could not possibly be paid tips and for which Defendant actively prevents them from earning tips. Defendant knows and has known dealers are spending more than 20% of their time on non-tip producing tasks and pays them the tip credit rate for this work anyway.

**Defendant's Uniform Dealer Scheduling Policies Void the Tip Credit Under the NJWHL**

25. Under the NJWHL, an employer may, in certain circumstances, take a "tip credit" toward its state minimum wage obligations for tipped employees. New Jersey's regulations provide that "[i]n order for the employer to claim the maximum tip credit . . . , the employer must demonstrate that the employee received at least that amount in actual tips." N.J. Admin. Code § 12:56-3.5(s). So "[i]f the employee received less than the maximum tip credit amount in tips, the

employer is required to pay the balance, so that the employee receives at least the minimum hourly wage." *Id.* Starting January 1, 2025, New Jersey minimum wage is $15.92.[1] Currently, the maximum tip credit is $9.87. N.J. Admin. Code § 12:56-3.5(a).

26. Further, New Jersey implemented a regulation on tipped employees performing significant non-tipped work to ensure those workers are paid minimum wage for such time. "Where a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek) performing related duties, no tip credit may be taken for the time spent in such duties." *See* N.J. Admin. Code § 12:56-3.5(n).

27. Defendant uniformly requires Plaintiff and other dealers to work for less than minimum wage for—at a bare minimum just based on the schedule set by Defendant—25% of their time for before accounting for time spent opening and closing the tables during which dealers cannot earn tips, pre- and post-shift work during which dealers cannot earn tips, and waiting time at the tables.

28. Defendant's 20-minute mandated period away from the tables is, by definition, not tip generating time. At the same time, it is a related duty that the company requires them to perform. The 20-minute periods off the floor are not voluntary; the company requires them. Defendant precludes the dealers from earning tips during this period. Further, the mandated 20-minute period off the casino floor is purely for the benefit of Defendant so that, among other things, the dealers do not make mental mistakes costing the casino money when dealing. The time is not the dealer's own time—it is not long enough to be a *bona fide* meal period and the dealers are unable to leave the property (*e.g.*, it can take five minutes just to walk across the casino floor).

---

[1] New Jersey's minimum wage chart available here: https://www.nj.gov/labor/wageandhour/assets/PDFs/minimumwage_postcard.pdf

Defendant recognizes this because the time is on-the-clock and paid, albeit at the sub-minimum wage tip credit rate. Quixotically, Defendant pays dealers the tip credit rate for this time, but they simultaneously preclude them from earning tips because they are not permitted to be on the casino floor. As a result, Defendant requires the dealers to stay on-the-clock for less than minimum wage while they await their time to return to the floor to do the job that allows them to earn tips from patrons.

29. Under the NJWHL, the dealers spend well over 20% of their time on non-tipped work. All the time these workers spend during these 20-minute periods must be paid at the full minimum wage hourly rate of $15.92. *See* N.J. Admin. Code § 12:56-3.5(n). Further, because Defendant has elected to schedule its dealers such that they spend at least 25% of their time on non-tipped work that is ineligible for the tip credit and that time is included in the tip pool, the casino forfeits the tip credit in its entirety.

**Defendant's Uniform Dealer Scheduling and Tip Credit Practices Violate the FLSA**

30. For many of the same reasons, the above policies and practices of Defendant likewise violated the FLSA.

31. District courts look to the Department of Labor's historic interpretation of the dual jobs regulation to preclude an employer from claiming a tip credit for time spent on non-tip producing work that exceeds 20% of the employee's work time. Despite the Fifth Circuit's vacatur of the 2021 regulation, Courts have "recently found that the 1988 Department of Labor Guidance and the 80/20 Rule are still persuasive authorities." *Thomas v. Morning Chef, LLC*, No. 2:23-CV-02719, 2025 WL 2721177, at *5 (S.D. Ohio Sept. 24, 2025); *see also Hallman v. Flagship Rest. Grp., LLC*, 762 F. Supp. 3d 830, 841 (D. Neb. 2025) (After the Fifth Circuit's vacatur of the 2021 regulation, "the 2019 version of the Dual Jobs Regulation and pre-80/20 Rule circuit caselaw

control.”).

32. Here, for the reasons stated above, Defendant required table games dealers to spend at least 25% of their working time on mandated rest periods during which the dealer is precluded from earning tips. The table games dealers also have significant idle time at the tables during which they are not earning tips as well as pre- and post-shift time spent on tasks like dealer meetings. For the same reasons, the table games dealers are not “tipped employees” and not “customarily and regularly tipped” for purposes of the time exceeding the 20% threshold. 29 U.S.C. § 203(m), (t). Thus, Defendant’s decision to include this tip credit-ineligible time in the mandatory tip pool voids the tip pool under the FLSA, including the ability to claim a tip credit for workers subject to the mandatory tip pool. *Id.*

**Defendant Uniformly Retains Dealers’ Tips to**
**Offset Administrative Costs in Violation of the NJWHL and the FLSA**

33. Defendant requires its dealers to pool all their tips. In other words, when a dealer is handed a tip from a patron, the dealer places that tip into the tip (or toke) box where it is pooled with all others dealers’ tips. At the end of every day, the tips are counted.

34. One of the costs of operating a casino (not unlike utilities, furnishings, and labor) is the cost of counting and verifying the tips every day so that they may be distributed to dealers who are a part of a tip pool. Defendant requires the dealers to count the tips for purposes of distribution and used their tips to pay them to perform this administrative task.

35. Tips are collected and counted each morning at around 4 a.m.

36. The dealers who count the tips are typically members of the toke committee and the number of dealers performing the count varies.

37. The work is performed for the benefit of the company and it is performed off-the-clock. In other words, Defendant requires the tips to be counted and does not pay the dealers to do

so. The cost of counting the tips is part of operating a business like rent or utilities. It is a cost that must be borne by the business. The dealers are not in business for themselves and their wages cannot be used to subsidize Defendant's business operation expenses.

38. This is plainly unlawful under the NJWHL. *See* N.J. Admin. Code § 12:56-3.5(g) ("The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than as wages or in furtherance of a valid tip pool; this includes, a prohibition against the employer using an employee's tips to pay any portion, however small, of the fee charged to the employer by a credit card company or other financial institution for the use of credit or debit cards in its business, including the processing of such credit or debit card transactions.").

39. For the same reasons this conduct violates the NJWHL, it likewise violates the FLSA. *See* 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes…").

**<u>Defendant Was Not Entitled to Utilize the Tip Credit Due to its Failure to Provide Notice</u>**

40. Pursuant to the explicit language of New Jersey law, "[a]n employer is not eligible to take the tip credit …. unless it has informed its tipped employees in advance of the employer's use of the tip credit of the following: (1) the amount of the cash wage that is to be paid to the tipped employee by the employer; (2) the amount of the tip credit, which will be claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (3) that all tips received by the tipped employee must be retained by the employee, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (4) that the tip credit shall not apply to any employee who has not been informed of the requirements of this section." N.J. Admin. Code § 12:56-3.5(q).

41. Defendant employs Plaintiff and other similarly situated tipped employees and pays them a direct cash wage that is less than the state minimum wage (currently $15.92 per hour) but, for large portions of the limitations period made no effort to comply with New Jersey's tip credit notice requirements. Although Defendant may argue it began attempting to comply with New Jersey's tip credit notice requirements in the last few years, for most of the NJWHL's six-year limitations period (during all of which Plaintiff was paid less than New Jersey minimum wage), Defendant took no steps to comply with New Jersey's tip credit notice requirements. Despite this violation of the NJWHL's tip credit notice provisions, Defendant took a tip credit toward its obligations to pay the state minimum wage to Plaintiff and all other similarly situated tipped employees.

42. Specifically, Plaintiff and other similarly situated employees were not informed, in advance of Defendant's use of the tip credit, of (a) the amount of the tip credit claimed by Defendant; (b) that the tip credit amount claimed by Defendant may not exceed the value of the tips actually received by the employee; (c) that all tips received by the tipped employee must be retained by the employee, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and/or (c) that the tip credit shall not apply to any employee who has not been informed of these requirements.

43. Defendant's NJWHL violations alleged herein were willful in that Defendant either knew of the specific NJWHL requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether its conduct violated the NJWHL.

44. As a result of Defendant's above-described NJWHL violations, Plaintiff and other similarly situated employees are entitled to recover from Defendant the amount of the sum of (1)

the tip credit taken (i.e., the difference between the direct cash wage and the required state minimum wage), which is the amount of the unpaid minimum wages, and (2) a reasonable attorneys' fee and costs of this action.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

45. Plaintiff brings Counts I (the NJWHL claim) and II (the NJWPL claim) for violations of New Jersey's tip credit provisions as a Rule 23 class action:

> **Rule 23 Class – Table Games Dealer Scheduling and Tip Credit Practices:** All persons currently or formerly employed by Defendant as table games dealers who participated in the dealers' tip pool for at least one workweek since March 13, 2020 through the date of the Court's class certification order.

46. Plaintiff brings Count III, the FLSA claim arising out of Defendant's violation of the FLSA's tip credit provisions as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the following collective:

> **FLSA Collective:** All persons currently or formerly employed by Defendant as table games dealers who participated in the dealers' tip pool for at least one workweek since March 13, 2023 through the date of the Court's collective certification order.

47. Plaintiff brings Counts IV (the NJWHL claim) and V (the NJWPL claim) for violations of New Jersey's tip credit notice provisions as a Rule 23 class action:

> **Rule 23 Class – Tip Credit Notice:** All persons currently or formerly employed by Defendant and were paid a direct cash wage of less than the New Jersey state minimum wage since March 13, 2020 through the date of the Court's class certification order.

48. Plaintiff's NJWHL and NJWPL claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

49. The classes contain, at least, hundreds of class members. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice. All of the

information necessary to provide this notice is in the possession of Defendant.

50. There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the classes arising from Defendant's actions include, without limitation, the following:

a. Whether Defendant paid some table games dealers pursuant to the tip credit;

b. Whether Defendant required table games dealers to count tips and paid them for it from the tip pool;

c. Whether Defendant required table games dealers to spend, at least, 20% of their time on mandated periods away from the casino floor;

d. Whether the mandated 20-minute periods away from the tables and on-the-clock time can be paid pursuant to the tip credit when it exceeds 20% of the workweek;

e. Whether Defendant provided Plaintiff and class members sufficient notice of their intent to claim a tip credit prior to paying a sub-minimum direct cash wage; and

f. Whether Defendant has forfeited the tip credit.

51. The questions set forth above predominate over any questions affecting only individual persons, and class actions are superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

52. Plaintiff's claims are typical of those of the classes in that class members have been employed in the same or similar positions as Plaintiff (with respect to the dealer scheduling and tip credit practice claims) and were subject to the same or similar unlawful practices as Plaintiff.

53. A class action is the superior method for the fair and efficient adjudication of Plaintiff's claims. Defendant has acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

54. Plaintiff is an adequate representative because he is a member of each of the classes he seeks to represent, and his interests do not conflict with the interests of the members of those classes. The interests of the members of the classes will be fairly and adequately protected by Plaintiff and his undersigned counsel, who are experienced prosecuting complex wage and hour, employment, and class action litigation.

55. Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in consistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## COUNT I – Violation of the New Jersey Wage and Hour Law

***Arising Out of Defendant's Scheduling and Tip Credit Practices, and Defendant's Retention of Table Games Dealers' Tips to Defray Administrative Costs***

56. Plaintiff and the putative class members have been entitled to the rights, protections, and benefits provided under the NJWHL, N.J. Stat. Ann. § 34:11-56a, *et seq.*

57. The NJWHL regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during part or all of the applicable limitations period for a minimum wage

consistent with that provided for under federal law. N.J. Stat. Ann. § 34:11-56a4.

58. During all times relevant to this action, Defendant was the "employer" of Plaintiff and the class members within the meaning of the NJWHL. N.J. Stat. Ann. § 34:11-56a1.

59. During all times relevant to this action, Plaintiff and the class members were Defendant's "employees" within the meaning of the NJWHL. N.J. Stat. Ann. § 34:11-56a1.

60. Plaintiff and the class members are covered, non-exempt employees within the meaning of the NJWHL. Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek. N.J. Stat. Ann. § 34:11-56a4.

61. Pursuant to the NJWHL, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. N.J. Stat. Ann. § 34:11-56a4(b-1).

62. Although the NJWHL contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none of those exceptions (or exemptions) applies here. N.J. Stat. Ann. § 34:11-56a4.

63. Plaintiff and the class members are victims of uniformly applied scheduling and tip credit policy that resulted in the failure to pay minimum wages and overtime wages for each table games dealer due to the forfeiture of the tip credit for the reasons set out at length above.

64. Defendant violated the NJWHL by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek. Defendant also violated the NJWHL by failing to pay overtime at 1.5 times the regular rate (of at least minimum wage) for all hours over 40 in a workweek.

65. Specifically, as set out at length above, Defendant uniformly attempted to claim a tip credit under New Jersey law against its obligation to pay Plaintiff and other table games dealers

the minimum wage.

66. Defendant did so while requiring table games dealers to perform excessive non-tipped work exceeding 20% of their workweek. Defendant was not entitled to claim a tip credit for that time but did so anyway. Defendant has forfeited the ability to compensate its dealers with the tip credit. *See* N.J. Admin. Code § 12:56-3.5(n); 29 CFR § 531.56.

67. Plaintiff and the class members are entitled to damages equal to all unpaid minimum and overtime wages due during all time since March 13, 2020, less any amount actually paid to the employees by Defendant. N.J. Stat. Ann. § 34:11-56a25.1.

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and class members damages for unpaid minimum wages, misappropriated tips, and any other compensatory damages available under N.J. Stat. Ann. § 34:11-56a25.1;

b. Award Plaintiff and class members post-judgment interest;

c. Award Plaintiff's and class members' counsel attorneys' fees and costs as allowed by N.J. Stat. Ann. § 34:11-56a25.1; and

d. Award Plaintiff and the class members such other relief as the Court deems fair and equitable.

## <u>COUNT II – Violation of the New Jersey Wage Payment Law</u>

***Arising Out of Defendant's Scheduling and Tip Credit Practices, and Defendant's Retention of Table Games Dealers' Tips to Defray Administrative Costs***

68. Plaintiff and the putative class members have been entitled to the rights, protections, and benefits provided under the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat Ann. § 34:11-4.1 *et seq.*

69. The NJWPL regulates, among other things, the payment of and collections of wages

due. N.J. Stat Ann. § 34:11-4.1 *et seq*.

70. During all times relevant to this action, Defendant was the "employer" of Plaintiff and the class members within the meaning of the NJWPL. N.J. Stat Ann. § 34:11-4.1(a).

71. During all times relevant to this action, Plaintiff and the class members were Defendant's "employees" within the meaning of the NJWPL. N.J. Stat Ann. § 34:11-4.1(b)).

72. Paying an employee less than minimum wage violates the NJWPL. N.J. Stat. Ann. § 34:11-4.10. Thus, the same conduct that violated the NJWHL discussed at length above likewise violates the NJWPL.

73. Plaintiff and the class members are entitled to liquidated damages equal to 200 percent of the wages lost or of the wages due during all time since March 13, 2020, less any amount actually paid to the employees by Defendant. N.J. Stat. Ann. § 2A:14-1; *see also Meyers v. Heffernan*, No. CIV.A. 12-2434 MLC, 2014 WL 3343803, at *8 (D.N.J. July 8, 2014) ("the Court finds that a private cause of action under the [New Jersey Wage Payment Law, N.J. Stat. § 34:11-4.1 *et seq.*] is subject to the six-year statute of limitations provided by N.J.S.A. 2A:14–1 for claims for breach of contract and other economic harm").

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and class members damages for unpaid wages under N.J. Stat Ann. § 34:11-4.10;

b. Award Plaintiff and class members post-judgment interest;

c. Award Plaintiff's and class members' counsel attorneys' fees and costs as allowed by N.J. Stat Ann. § 34:11-4.10; and

d. Award Plaintiff and the class members such other relief as the Court deems fair and equitable.

**COUNT III – Violation of the Fair Labor Standards Act**

***Arising Out of Defendant's Scheduling and Tip Credit Practices, and Defendant's Retention of Table Games Dealers' Tips to Defray Administrative Costs***

74. At all times material herein, Plaintiff and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

75. The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1).

76. Defendant is subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and its employees are engaged in commerce.

77. During all relevant times to this action, Defendant was the "employer" of Plaintiff and all similarly situated employees within the meaning of the FLSA. 29 U.S.C. § 203(d).

78. During all times relevant to this action, Plaintiff and all similarly situated employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

79. Plaintiff and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA. Accordingly, Plaintiff and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

80. Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

81. Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

82. Plaintiff and putative class members are victims of uniformly applied scheduling and tip credit policy that resulted in the failure to pay minimum wages and overtime wages for each member of the tip pool due to the forfeiture of the tip credit.

83. Plaintiff and all similarly situated employees are entitled to damages equal to the mandated minimum wage and overtime premium pay since March 13, 2023, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

84. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiff and all similarly situated employees are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

85. As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated employees. Accordingly, pursuant to 29 U.S.C. § 216(b), Defendant is liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

86. Defendant violated the FLSA by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

87. Specifically, as set out at length above, Defendant paid Plaintiff and other similarly situated table games dealers pursuant to the tip credit and required them to pool their tips.

88. Defendant then required table games dealers to perform excessive non-tipped work exceeding 20% of their workweek. Defendant was not entitled to claim a tip credit for that time but did so anyway. Defendant also required those workers to be paid tips from the tip pool for that time despite that work not constituting part of the tipped occupation and those workers not being customarily and regularly tipped employees for that work. As a result, Defendant created and mandated participation in an unlawful tip pool. Defendant thus forfeits the tip credit applied to each worker required to participate in the pool. Likewise, Defendant retained tip pool funds by using them to defray the costs of the pool, which Defendant requires. This also results in forfeiture of the tip credit and mandates return of the misappropriated tips. 29 U.S.C. § 203(m), 216(b).

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and all similarly situated employees damages for unpaid minimum wages and overtime wages under 29 U.S.C. § 216(b);

b. Award Plaintiff and all similarly situated employees damages for misappropriated tips under 29 U.S.C. § 216(b);

c. Award Plaintiff and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d. Award Plaintiff and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e. Award Plaintiff and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b);

f. Award Plaintiff and all similarly situated employees such other relief as the

Court deems fair and equitable.

**COUNT IV – Violation of the New Jersey Wage and Hour Law**

***Arising Out of Defendant's Failure to Give Notice of Intent to Claim a Tip Credit***

89. Plaintiff re-alleges the allegations set forth above.

90. Defendant violated the NJWHL by failing to pay Plaintiff and all others similarly situated minimum wages for all hours worked in a workweek.

91. Specifically, Defendant paid Plaintiff and others similarly situated below the state minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the state minimum wage.

92. In particular, Plaintiff and other similarly situated employees were not informed, in advance of Defendant's use of the tip credit, of (a) the amount of the tip credit claimed by Defendant; (b) that the tip credit amount claimed by Defendant may not exceed the value of the tips actually received by the employee; (c) that all tips received by the tipped employee must be retained by the employee, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and/or (c) that the tip credit shall not apply to any employee who has not been informed of these requirements.

93. Defendant failed to comply with the notification requirements set forth within the express language of the NJWHL and supporting regulations. N.J. Admin. Code § 12:56-3.5(q).

94. Since Defendant failed to properly inform Plaintiff and other similarly situated tipped employees of the required tip credit provisions and were not entitled to claim a tip credit, Defendant has willfully violated state law by failing and refusing to pay all state minimum wages due and owing to Plaintiff and all other similarly situated employees.

95. Defendant's practice was to unlawfully and willfully fail to comply with the requirements for their entitlement to a tip credit and therefore, Plaintiff and the similarly situated

tipped employees were not properly paid state minimum wages pursuant to the NJWHL.

96. Plaintiff and the class members are entitled to damages equal to all unpaid minimum and overtime wages due during all time since March 13, 2020, less any amount actually paid to the employees by Defendant. N.J. Stat. Ann. § 34:11-56a25.1.

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and class members damages for unpaid minimum wages, overtime wages, and any other compensatory damages available under N.J. Stat. Ann. § 34:11-56a25.1;

b. Award Plaintiff and class members post-judgment interest;

c. Award Plaintiff's and class members' counsel attorneys' fees and costs as allowed by N.J. Stat. Ann. § 34:11-56a25.1; and

d. Award Plaintiff and the class members such other relief as the Court deems fair and equitable.

**<u>COUNT V – Violation of the New Jersey Wage Payment Law</u>**

***Arising Out of Defendant's Failure to Give Notice of Intent to Claim a Tip Credit***

97. Plaintiff re-alleges the allegations set forth above.

98. Paying an employee less than minimum wage violates the NJWPL. N.J. Stat. Ann. § 34:11-4.10. Thus, the same conduct that violated the NJWHL discussed at length above likewise violates the NJWPL.

99. Plaintiff and the class members are entitled to liquidated damages equal to 200 percent of the wages lost or of the wages due during all time since March 13, 2020, less any amount actually paid to the employees by Defendant. N.J. Stat. Ann. § 2A:14-1; *see also Meyers v. Heffernan*, No. CIV.A. 12-2434 MLC, 2014 WL 3343803, at *8 (D.N.J. July 8, 2014) ("the Court finds that a private cause of action under the [New Jersey Wage Payment Law, N.J. Stat. § 34:11-

4.1 *et seq.*] is subject to the six-year statute of limitations provided by N.J.S.A. 2A:14–1 for claims for breach of contract and other economic harm”).

WHEREFORE, Plaintiff prays for the following relief:

a. Award Plaintiff and class members damages for unpaid wages under N.J. Stat Ann. § 34:11-4.10;

b. Award Plaintiff and class members post-judgment interest;

c. Award Plaintiff’s and class members’ counsel attorneys’ fees and costs as allowed by N.J. Stat Ann. § 34:11-4.10; and

d. Award Plaintiff and the class members such other relief as the Court deems fair and equitable.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial as to all claims so triable.

Dated: August 4, 2026

s/ R. Andrew Santillo

**WINEBRAKE & SANTILLO, LLC**
R. Andrew Santillo, Esq.
(NJ ID #025512004)
Mark J. Gottesfeld, Esq.
(NJ ID #027652009)
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
Telephone: 215-884-2491
Facsimile: 215-884-2492
asantillo@winebrakelaw.com
mgottesfeld@winebrakelaw.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, Esq., admitted *pro hac vice*
Alexander T. Ricke, Esq., admitted *pro hac vice*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100

Facsimile: (816) 714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, Esq., *pro hac vice* forthcoming
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068-1170
Telephone: (816) 781-0002
Facsimile: (816) 781-1984
ryan@mcclellandlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I, R. Andrew Santillo, hereby certify that on August 4, 2026, the attached was filed electronically and is available for viewing by all counsel of record via the Court's ECF system.

s/ R. Andrew Santillo
R. Andrew Santillo
WINEBRAKE & SANTILLO, LLC